**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                      **Cr. No. H-21-cr-357**

**ELIJAH BOISSEAU**

SUPPLEMENTAL BRIEFING IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS

The defendant, Elijah Boisseau ("Mr. Boisseau"), submits this supplemental

briefing in response to the Court's Order of August 18, 2022. The Court's topics are

listed below, followed by Mr. Boisseau's responses.

    I.    Whether any exigency existed when the officers opened Defendant's
        backpack.

No exigency existed when police officers opened closed containers in the

black Mercedes, including the backpack in the backseat.

Importantly, while the government has urged in its Response to Mr.

Boisseau's Motion to Suppress that various exceptions to the warrant requirement

justify the opening of closed containers in the black Mercedes, the government has

advanced no argument that exigent circumstances existed.

Indeed, there is no basis to support a finding of exigency at the time of the

search of the closed containers in the Mercedes. The Mercedes was stopped a little

after 4:00 p.m. on Wednesday, June 16, 2021 on I-10 in heavy traffic. Both the

driver, Elijah Boisseau, and the passenger, Eugene Rogers, were taken into custody and placed in separate police vehicles. Exh. A (report of Officer Byland, describing stop).

While the Mercedes was still on the highway, Officer Huckabee took photos of the interior of the car. One of his photos shows that the backpacks in the back seat of the car were closed at this time. Exh. B. At this point, "Officers cleared the freeway for safety and began our investigation just off the freeway at a Holiday Inn Express." Exh. A at 2. Only once the police officers, along with the Mercedes, moved to a safer location did officers open the closed containers – including the black backpack – in the Mercedes.

The Fifth Circuit determines whether exigent circumstances exist after consideration of five, non-exhaustive factors:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant;
>
> (2) the reasonable belief that contraband is about to be removed;
>
> (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;
>
> (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and
>
> (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

United States v. Aguirre, 664 F.3d 606, 611 (5th Cir. 2011).

None of these factors support a finding of exigency when officers opened closed containers in the Mercedes after moving the vehicle to the parking lot of a nearby hotel. Whether by telephone or in person, a warrant could be speedily obtained by the host of officers on scene, which was less than 10 miles from downtown Houston and the courthouses. There was no reasonable belief that contraband was about to be removed, as several officers were with the moved Mercedes. There was no evidence that the officers were under threat or lacked ability to summon other officers if needed; there was likewise no evidence that other persons might seek to recover any contraband in the closed containers in the police vehicle. And, finally, as police were investigating a pawn shop robbery in which firearms and jewelry were stolen, there was no plausible concern that any evidence might be destroyed (as might be the case in a drug or paperwork investigation, for example).

For all these reasons, there is no plausible claim of exigent circumstances at the time of the opening of the closed containers in the Mercedes.

II.    Whether there was any reason a warrant could not have been obtained prior to opening the backpack.

There was no reason a warrant could not have been obtained prior to opening the backpack or other closed containers in the Mercedes.

3

As noted, the Mercedes was stopped and came into police control at approximately 4:00 p.m. on Wednesday, June 16, 2021 within 10 miles of downtown Houston.

Ultimately, a warrant for the Mercedes was sought by HPD officers on June 21, 2021, that is, 5 days after the vehicle had been stopped and had come into HPD control. Exh. C. at 3. This was also long after containers in the Mercedes, including the black backpack, had been opened by law enforcement officers.

There was no impediment to the investigating officers obtaining a warrant. As described in the previous section, after Mr. Boisseau and Mr. Rogers were taken into custody, the Mercedes was in sole control of law enforcement and there was no exigency. Even if increasing traffic in the late afternoon might have slowed the efforts of police to drive to downtown Houston to obtain a warrant in person, the availability of obtaining a warrant by telephone, Fed. R. Crim. P. 41(d)(3), made even this slight inconvenience easily surmountable.

III.　Whether officers asked Defendant's consent before opening the backpack.

Law enforcement officers did not ask Mr. Boisseau or Mr. Rogers for consent prior to the opening of the black backpack or any other closed container found in the Mercedes.

In its response to Mr. Boisseau's Motion to Suppress, the government does not argue that consent to search the Mercedes or any containers within the Mercedes was sought from Mr. Boisseau or Mr. Rogers.

In addition, the reports of law enforcement officers on the scene support the inference that neither Mr. Boisseau nor Mr. Rogers was asked for permission to conduct any searches prior to their removal from the scene in custody.

According to the affidavit signed by Officer Helms when, on June 21, 2022, he sought a warrant to justify the search of the Mercedes, "Both Elijah Boisseau and Earl Rogers were transported to the ATF facility for interview." Exh. C at 2. Officer Helms makes no mention of any request for consent to search from either Mr. Boisseau or Mr. Rogers.

Finally, in the attached declaration based on her review of some of the body-worn camera videos provided in discovery, Ms. Corina Ramos makes no mention of any request by police officers for consent from Mr. Boisseau or Mr. Rogers to search the Mercedes or any of the containers within the car. Exh. D.

IV.    Where Defendant was physically detained when officers opened the backpack.

Mr. Boisseau was handcuffed in the rear of Officer Serrano's police vehicle during the search of the backpack and other closed containers in the Mercedes he had been driving. Officer Serrano's police vehicle was parked about 30 yards or so

5

away from the Mercedes at the time the black backpack and other closed containers were opened in the parking lot of the Holiday Inn Express.

According to Ms. Ramos's review of government-provided body-worn camera videos, Officer Serrano placed Mr. Boisseau in the back of his police vehicle on I-10 at about 4:21 p.m., and Mr. Boisseau remained in Officer Serrano's vehicle until custody was transferred to the ATF at about 5:47 p.m. During this period, Officer Serrano drove with Mr. Boisseau to the parking lot of a nearby Holiday Inn Express, which is where other officers had moved the car driven by Mr. Boisseau and opened the containers in the vehicle. Officer Serrano left that parking lot at about 5:02 p.m. to transport Mr. Boisseau to the office of the ATF. Exh. D.

V.     At what point officers first had probable cause to arrest Defendant.

Officers had probable cause to arrest Mr. Boisseau once they perceived him as failing to obey police instructions. As the government contended at the motion hearing, after officers struck Mr. Boisseau's vehicle on the highway, they perceived Mr. Boisseau as failing to obey instructions to get out of the vehicle and display his hands and officers also believed Mr. Boisseau again attempted to drive the Mercedes. See Gov't Resp. at 12-13. While Mr. Boisseau does not concede that any failure of his to obey was "willful," as required by Texas law, see Tex. Transp. Code § 542.501; § 545.421(a), the officers may have reasonably perceived his actions at the time as not being in accordance with the law.

6

Prior to that time, however, officers lacked probable cause to believe Mr. Boisseau had committed a robbery or other offense. The facts know to law enforcement officers were:

1) At about noon, three African-American men had robbed a pawnshop with guns. One man had on red, 3-striped track pants, a black T-shirt, and white shoes. An unremarkable black bag was carried by one of the robbers. The men were driving a black BMW, but no license plate information was obtained.

2) More than 3 hours later and in a parking lot about 8 miles away, an officer saw a black Mercedes. The officer had seen that same black Mercedes in that parking lot the previous day, and the occupants of the Mercedes had engaged with a black BMW at that time.

3) The officer saw up to six people, including one woman, moving amongst the Mercedes and two other vehicles. One person, Jhoneithon Grigsby, was recognized. Another man was seen changing from a black T-shirt to a white T-shirt; that man also had on red, 3-striped track pants and white sneakers. That man placed a black backpack in the back seat of the Mercedes and then, with another man as passenger, drove off.

4) The officer in the parking lot saw no contraband or weapons; did not see the black BMW that had been observed at the robbery; and did not recognize the driver or passenger of the Mercedes.

As urged at the motion hearing, Mr. Boisseau disputes that these facts give rise to reasonable suspicion justifying an investigatory stop of the Mercedes driven by Mr. Boisseau. But, even if the Court finds that law enforcement officers had reasonable suspicion to stop the Mercedes, these facts do not satisfy the more demanding standard of probable cause.

And, because law enforcement officers lacked probable cause to believe that Mr. Boisseau or Mr. Rogers had committed the robbery of the pawn shop, the automobile exception to the warrant requirement cannot justify the warrantless search of the Mercedes. The automobile exception to the warrant requirement permits officers to "conduct a search if they have probable cause to believe that the vehicle contains contraband or evidence of a crime." United States v. Ned, 637 F.3d 562, 567 (5th Cir. 2011). By requiring probable cause to justify a warrantless search of an automobile or its contents, the Supreme Court requires a greater degree of certainty than what is required for an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), which requires merely "reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000) (discussing reasonable suspicion standard). The scope of a warrantless search of an automobile "is defined by the object of the search and

the places in which there is probable cause to believe that it may be found." United

States v. Ross, 456 U.S. 798, 824 (1982).

Accordingly, even if the Court agrees that officers had probable cause to arrest

Mr. Boisseau on the highway because he had failed to follow instructions of officers

after they hit the Mercedes, this conclusion does nothing to support a finding that

probable cause existed to search the vehicle and its containers. "In many cases, as

when a recent occupant is arrested for a traffic violation, there will be no reasonable

basis to believe the vehicle contains relevant evidence." Arizona v. Gant, 556 U.S.

332, 343 (2009). Here, too, there is no reason to think that evidence relevant to any

failure by Mr. Boisseau to obey law enforcement instructions would be found within

the vehicle. Any such offense was committed by Mr. Boisseau through his actions

taken in response to police instructions; no physical evidence was involved or

suspected.

> VI.    Whether the backpack had any distinctive markings or features that allowed officers to match it with bags captured on video surveillance of the robbery.

Other than being black, the backpack found in the backseat of the Mercedes

driven by Mr. Boisseau had no distinctive markings linking it any bags captured in

video surveillance of the pawnshop robbery.

The video surveillance footage of the robbery is simply too indistinct to allow

for any unique markings to be seen on the bags carried by the robbers. Attached as

Exhibit E are two photos of two different robbers carrying a black bag. In neither picture is any distinct marking discernible.

For comparison, Exhibit B shows the black backpack in the backseat of the Mercedes prior to the police opening that bag. There is no way to tell whether the bag in the Mercedes is the same as any bag carried by the pawnshop robbers.

VII.   Whether and how officers made an inventory of the car's contents, as well as the actions' conformance to departmental policies.

Mr. Boisseau is aware of no evidence that law enforcement officers conducted an inventory search of his vehicle. Because no "detailed inventory list . . . on the wrecker slip" has been provided in discovery, it is clear that any search of the Mercedes was not done in accordance with the inventory policies of the Houston Police Department.

HPD's inventory policy provides as follows:

### Vehicle Inventory

Whenever an officer authorizes a nonconsent tow of a prisoner's vehicle, the officer shall personally conduct an inventory of items in the vehicle including any and all containers not secured by a lock and shall complete a wrecker slip. A detailed inventory list shall be written on the wrecker slip. Officers shall be specific in identifying inventoried items. General terms such as "miscellaneous property" shall not be used.

Exh. F at 7. If law enforcement officers had complied with this policy, a detailed, written inventory should have been produced and written on the wrecker slip. Because no such document has been produced in discovery in this case, it is obvious that the law enforcement officers who searched the Mercedes after moving it to the Holiday Inn Express parking lot were not acting in compliance with HPD's inventory policy.

At the motion hearing, the government argued that actions of the police officers conducting the warrantless search of the Mercedes were consistent with the purposes of the inventory exception to the warrant requirement and that the warrantless search was also justifiable on this basis – even if the officers failed to follow HPD's written inventory policy. This argument misunderstands the purpose and law of the inventory search exception to the warrant requirement and should be rejected.

"[A]n inventory search must not be a ruse for a general rummaging in order to discovery incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990). Accordingly, inventory searches are only reasonable under the Fourth Amendment when conducted pursuant to a "single familiar standard . . . to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." United States v. Lage, 183 F.3d 374, 380 (5th Cir. 1999). "[A]n inventory search of a seized

11

vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures . . . ." Id. "These standardized regulations and procedures must sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." United States v. McKinnon, 681 F.3d 203, 209-10 (5th Cir. 2012).

The warrantless search of the Mercedes was not completed in accordance with any standardized policy; it was solely a general rummaging through the vehicle and the closed containers within the vehicle. The inventory search exception to the warrant requirement cannot save the warrantless search of the Mercedes.

The government also cannot show that the inevitable discovery doctrine excuses the warrantless search of the Mercedes. This exception applies only if the government makes two showings by a preponderance of the evidence. First, the government must show a "reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct." United States v. Zavala, 541 F.3d 562, 579 (5th Cir. 2008). Second, the government must show that officers were "actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." Id.

The government makes no attempt to meet this second showing. "For the inevitable discovery exception to apply, the alternate means of obtaining the evidence must at least be in existence and, at least to some agree, imminent, if yet

12

unrealized." Id. There is no evidence that, at the time of the warrantless search of the containers within the Mercedes, any officer had taken the slightest step toward obtaining a warrant. On the contrary, the evidence is that no warrant was obtained until 5 days had passed.  See Zavala, 541 F3d at 580-81 (rejecting government argument that search of illegally seized cell phone was inevitable); United States v. Goree, 365 1086, 1088 n.2 (D.C. Cir. 2004) ("The government based its inevitability claim on the testimony of [two officers], each of whom testified that, but for [one officer's] mistake about consent, he would have stopped the search and sought a warrant. We are dubious that such conjectural testimony is adequate to apply the doctrine to this case.").

## Conclusion.

The Court's Order on Additional Briefing directs the parties to limit additional briefing to issues related to the search of the backpack in the Mercedes without first obtaining a warrant, and Mr. Boisseau has attempted to do so. Nonetheless, he notes that the Mercedes contained closed bags in addition to the black backpack at the time of the stop and search. For the same reasons that the warrantless search of the black backpack was conducted in violation of the Fourth Amendment, the searches of these other closed containers in the vehicle without a warrant also violated the Fourth Amendment.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas No. 3233
Texas State Bar No. 14003750

By /s/ Philip G. Gallagher
PHILIP G. GALLAGHER
Assistant Federal Public Defender
Attorney in Charge
New Jersey State Bar ID No. 2320341
Southern District of Texas No. 566458
Attorneys for Defendant
440 Louisiana, Suite 1350
Houston, Texas   77002-1056
　　　Telephone: 713.718.4600
　　　Fax: 713.718.4610

# CERTIFICATE OF SERVICE

I certify that on August 29, 2022, a copy of the foregoing was served by Notification of Electronic Filing upon all parties of record.

/s/ Philip G. Gallagher
PHILIP G. GALLAGHER

14