Case 4:21-cr-00357   Document 70   Filed on 09/06/22 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
September 06, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **VS.** | § § | **CRIMINAL ACTION NO. 4:21-CR-00357-001** |
| **ELIJAH BOISSEAU** | § § | |

**MEMORANDUM & ORDER**

Pending before the Court is Defendant's Motion to Suppress, which was the subject of an evidentiary hearing on August 15, 2022. The defendant, Mr. Elijah Boisseau ("Mr. Boisseau"), seeks to suppress the physical evidence that Houston Police Department ("HPD") officers obtained following their warrantless stop of Mr. Boisseau and subsequent search of the vehicle driven by him on June 16, 2021. Defendant argues that the government lacked reasonable suspicion for its stop and lacked probable cause or exigent circumstances to search the vehicle.

**I.      BACKGROUND**

The parties largely agree on the material facts in this case. (Docs. 53, 59.) As recounted by both parties, shortly before noon on June 16, 2021 HPD officers received reports that EZ Pawn at 13555 Westheimer Road had been robbed. Surveillance footage from the store captured three Black suspects, including one wearing red track pants with three white stripes along the leg, a baseball cap, a dark long-sleeved top with a white logo, gloves, and white low-top sneakers. The footage showed the suspects entering and exiting the store carrying firearms and black bags, and then leaving in a black BMW. (Doc. 53 at 1; Doc. 59 at 1-3; Doc. 69-5.)

Several hours after the robbery, HPD Officer Cox was conducting surveillance about eight miles from the robbery at 1800 Barker Cypress Road. Officer Cox saw a black Mercedes, a black

Infiniti, and a grey Ford F-250 park next to one another. (Doc. 53 at 2; Doc. 59 at 3-4, 6.) The day before, at the same location, Officer Cox had seen a black Mercedes with matching tags parked next to a BMW fitting the description of the suspect vehicle. At the time, Officer Cox had witnessed an individual going between the two cars. (Doc. 59 at 3-5.)

On the afternoon of the June 16 robbery, Officer Cox observed about six people moving bags between the three cars. A man in red jogging pants with white stripes—later identified as the defendant—took off a black long-sleeved shirt and put on a white t-shirt before getting into the Mercedes with a second man. (Doc. 53 at 2; Doc. 59 at 6-7; Doc. 69-3.)

Multiple law enforcement officers, some in unmarked vehicles, followed the Mercedes before stopping it on the highway. (Doc. 53 at 2; Doc. 59 at 8.) Once the vehicle was stopped, Mr. Boisseau allegedly failed to comply with police orders. (Doc. 59 at 12-16; Doc. 69-1.) Mr. Boisseau and his passenger were ordered out of the car and arrested. (Doc. 53 at 2; Doc. 59 at 16-17.) Officers searched both men incident to arrest, finding large quantities of cash on Mr. Boisseau, and cash and marijuana on his passenger. Officers also found a firearm that was in plain view behind the driver's seat. (Doc. 59 at 18-19.)

Officers drove the car off the highway into a parking lot. In the parking lot, they searched the car without a warrant or consent. (Doc. 53 at 2; Doc. 59 at 20-22.) As part of their search, they opened closed bags within the car. (Doc. 53 at 2; Doc. 59 at 24; Doc. 69-2.) Officers found firearms, jewelry, telephones, tools, and clothing. Not until later did the government draft a warrant. (Doc. 53 at 2; Doc. 59 at 24.) Defendant challenges the warrantless stop and subsequent search of the car and its contents. (Doc. 53.)

## II. LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014) (internal quotations omitted). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Evidence derived from an illegal search or seizure must be excluded. This exclusion serves a deterrent purpose. "Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct." *Terry v. Ohio*, 392 U.S. 1, 12 (1968).

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992). However, in cases where a search is not conducted pursuant to a warrant, the government bears the burden of proving that the search was lawful. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). Because officers lacked a warrant to stop and search the Mercedes, this Court inquires as to whether the government has met its burden of proving that its actions were lawful.

### III.     DISCUSSION

#### A. Whether Warrantless Stop of Vehicle was Based on Reasonable Suspicion

Defendant first argues that HPD's stop of the Mercedes was unconstitutional. (Doc. 53 at 3.) The constitutionality of investigatory stops is governed by the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry*'s two-step analysis asks, first, whether an officer's actions are justified at their onset. To be justified, there must be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Second, the Fifth Circuit's *Terry* inquiry examines "whether any subsequent action was reasonably related in scope to either the circumstances that justified the stop or to dispelling a reasonable suspicion that developed during the stop." *United States v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014) (citing *United States v. Brigham*, 382 F.3d 500, 506-07 (5th Cir. 2004) (en banc)). A court's analysis is holistic—"Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

Defendant's challenge focuses on the first step of this inquiry, contesting whether officers lawfully intercepted the car at the stop's inception. (Doc. 53 at 3.) The government offers several factors that they maintain, cumulatively, amounted to reasonable suspicion that the passengers of the car were engaged in criminal activity: 1) witness statements corroborated by live surveillance matching Mr. Boisseau and his passenger to suspects at the scene of the robbery; 2) prior interaction between the suspect vehicle and a vehicle matching the color, make and model, and tags of the Mercedes; 3) an officer's eyes on the vehicle from the time Mr. Boisseau entered it until it was stopped; and 4) HPD's ongoing investigation of a string of violent robberies. (Doc. 59

at 30.) Defendant does not contest these facts. Rather, Defendant argues that these factors do not amount to reasonable suspicion. (Doc. 53 at 3.)

While each of the listed factors alone might not be enough to amount to reasonable suspicion, the record viewed in its entirety provides significant evidence that HPD had a "particularized and objective basis" to link Mr. Boisseau to the theft of the pawn shop. *United States v. Broadway*, 850 F. App'x 271, 273 (5th Cir. 2021). In particular, the match between Mr. Boisseau's clothes and those of one of the robbers caught on surveillance video, the previous interaction between the Mercedes and a car suspected to have been involved in the robbery, and Officer Cox's observation of individuals carrying black bags into the car at 1800 Barker Cypress Road all support the conclusion that HPD had an objective and personalized belief that Mr. Boisseau had been involved in criminal activity.

### B. Whether Warrantless Search of Car and Its Contents was Based on Probable Cause

Having established that HPD had reasonable suspicion to stop the vehicle, the Court now turns to whether the prosecution met its burden of proving that HPD's warrantless search of the car and its sealed contents were justified by probable cause. While the Fourth Amendment generally requires that police obtain a warrant to perform a search, police may dispense with such a requirement if probable cause exists to search an automobile. *See Carroll v. United States*, 267 U.S. 132, 158-59 (1925); *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016). An officer has probable cause to conduct such a search "when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations omitted).

Like reasonable suspicion, a probable cause determination is based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("[W]e reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations."); *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990) ("A succession of otherwise 'innocent' circumstances or events [] may constitute probable cause when viewed as a whole. We do not consider the several factors in isolation, but rather in their interrelated context . . . so that the laminated total may indeed be greater than the sum of its parts.") Where police officers have probable cause to search an entire vehicle, they may "search [] every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

In this case, several factors indicate that a reasonable officer would have had cause to believe contraband or evidence relating the suspect to a crime was present in the car. As discussed above, before they effectuated their stop, HPD officers had evidence of Defendant's clothing matching that of one of the robbers, identification of the Mercedes as having interacted with a car matching the description of the suspect vehicle, and observation of black bags like those captured on camera being carried into the Mercedes. Further, once the stop ensued, the firearm in plain view and cash found on Mr. Boisseau's person provided additional reason for reasonable officers to believe there was evidence of the pawn shop robbery in the car. The Court concludes that the government has carried its burden of proving that officers had probable cause to effectuate their search of the car.

## IV.    CONCLUSION

The Court reminds law enforcement officials that "[p]olice must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." *Terry*

6

*v. Ohio*, 392 U.S. 1, 20 (1968).  Had police obtained a warrant before searching the Mercedes and its contents, the evidentiary hearing would likely have been unnecessary.

Nevertheless, because the stop was based on reasonable suspicion and the subsequent search of the vehicle was based on probable cause, evidence obtained as a result of these actions need not be suppressed on the basis advanced by Defendant. Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**.

Signed at Houston, Texas on September 6, 2022.

Keith P. Ellison
United States District Judge