UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA          4:21-CR-00357-1

VS.                               HOUSTON, TEXAS

ELIJAH BOISSEAU                   JULY 10, 2025

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF SENTENCING PROCEEDINGS
HEARD BEFORE THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE GOVERNMENT:               MR. JOHN SERGEI GANZ
                                  U.S. Attorney's Office
                                  1000 Louisiana Street
                                  Suite 2300
                                  Houston, Texas 77002


FOR THE DEFENDANT:                MR. CHUKWUDI IFEANYI EGBUONU
                                  Attorney at Law
                                  2202 Ruth Street
                                  Houston, Texas 77004


Official Court Reporter:          Lanie M. Smith, CSR, RMR, CRR
                                  Official Court Reporter
                                  United States District Court
                                  Southern District of Texas
                                  515 Rusk
                                  Room 8004
                                  Houston, Texas 77002


        Proceedings recorded by mechanical stenography,
transcript produced via computer.

**P R O C E E D I N G S**

THE MARSHAL:  All rise.

THE COURT:  Thank you.  Please be seated.

Let's turn to the United States versus Boisseau.

We'll take appearances of counsel and probation, please.

MR. GANZ:  Good morning, Your Honor.  John Ganz for the United States.

THE COURT:  Thank you.  Welcome.

MR. EGBUONU:  Good morning, Your Honor.  Chuck Egbuonu for Mr. Boisseau.

THE COURT:  Good morning to you.

THE PROBATION OFFICER:  And Brian Swane from probation, Your Honor.

THE COURT:  Thank you for being here.

You may be seated.  I'm sorry.  You may be seated.

Okay.  We're here on a sentencing.  I've reviewed the presentence report.  Have you reviewed it with your client?

MR. EGBUONU:  I have, Your Honor.

THE COURT:  Do you want to speak first, or do you want your client to speak first?

MR. EGBUONU:  I can speak first.

THE COURT:  Go ahead.

MR. EGBUONU:  Again, Your Honor, I know we filed a

sentencing memorandum pretty late last night.

THE COURT:  Yes, I got it.

MR. EGBUONO:  I don't know if the Court had a chance to look at it.

THE COURT:  Yes.

MR. EGBUONU:  But really the highlight to that is Mr. Boisseau is here to accept responsibility, and he's done that.  He did that in his plea.

THE COURT:  Yes, he did.

MR. EGBUONO:  He understands the nature of his offenses.  He understands that this is not conduct of somebody that's going to be a contributing member to society; however, what we're doing today is we're asking the Court for some leniency.

In his case, he had a co-defendant; his co-defendant pled guilty also; his co-defendant received 84 months.

I'm sure the government is going to argue that, you know, Mr. Boisseau pled to an additional robbery; however, that does not take away from the fact of he's still going to be sentenced to at least 84 months.

THE COURT:  At least, yes.

MR. EGBUONU:  At least 84 months.  And it's our position that 84 months is a significant sentence for deterrence and rehabilitation; and I really want to focus on

the rehabilitation because Mr. Boisseau, he's been incarcerated for a while now; and during that time, it has given him the ability to mature.  He has sat down and I've talked to him numerous times and he has told me about the plan and he's going to speak to his plan also, but I want to touch on it.  He talked about the different things that he wants to do and how this is going to be different.  He talked about how he wants to avail himself --

THE COURT:  Not too fast.

MR. EGBUONU:  Oh, sorry.

He talked about how he wants to avail himself to different programs at BOP, he talks about how he wants to get different certifications, he wants to get an electrician certification, he wants to get HVAC, because these are tools that he has not had growing up.

As the Court is probably aware from just looking at the PSR report, he came from a troubling background.  He grew up --

THE COURT:  Very troubled.

MR. EGBUONU:  He grew up in poverty.  He grew up in situations that, again, you know, ideally no child in adolescence --

THE COURT:  His mother was incapacitated.

MR. EGBUONU:  -- should have to go through.

So he witnessed his mother struggle with

addiction, he witnessed his mother's struggle and kind of navigate the criminal justice system.

Again, we're not using those as excuses; however, we are using that to kind of give the Court some insight as to kind of how, you know, some of the reasons why he probably ended up before you today.

But, again, he understands that if he continues to do these things, it's not going to end up well.  Not only is he going to spend the rest of his life in jail, he's not going to be able to be a contributing member of society.

Even though the troubles that his mother went through, his mother is actually a shining example of what he can become.  Even though she had those troubles while he was a youth, she went through the justice system and now she's a productive member in society.

His grandmother is also here --

THE COURT:  She has wrote a very affecting letter.  I appreciate that.

MR. EGBUONU:  His grandmother is here to speak to the Court if you want to hear additional words from her.  But, you know, they know his plan, they know what he wants to do, and they're here today and they have committed to supporting him to make sure that he's a better member of society.

THE COURT:  I'm so pleased that he has family support.  That is true far too seldom.  But the sentencing guidelines can

be forbidding and the whole criminal justice system is aimed toward punishment for serious offenses.  This is a serious offense, and I don't know how we get around the consecutive sentences.

MR. EGBUONU:  And, again, he understands he's going to be sentenced today.  He understands that he has to be punished for the acts that he did; however, we're asking the Court to, of course, give the 84 months for the 924, the brandishing, because the Court has to; however, we're asking the Court to give some leniency on the Hobbs Act robberies.  And, again, that's within the Court's purview and the Court can deviate and downward variance and downward depart and we're asking the Court to give him a month on these robberies because the 84 months is significant time to essentially accomplish the factors set out in 3553.

Again, 3553 is not only to punish, it's also to rehabilitate.

THE COURT:  Absolutely.

MR. EGBUONU:  It's also to rehabilitate and that's what we're focused on.  He's going to be punished.  We all know he's going to be punished.  And I'm sure the government is going to ask for a long sentence, but a long sentence doesn't necessarily equate to deterrence, it doesn't necessarily equate to rehabilitation.

What we're asking is for him to, of course, be

punished, which is the 84 months plus a month on each Hobbs Act, but also that shows him that, look, you have the ability to rehabilitate and more importantly once he -- he's still going to be under the Court's supervision.  The Court can impose up to five years supervised release; so if he doesn't do the things that he's told us, the things he told his family, he's going to be right before the Court and the Court is going to have the ability to sentence him up to another five years if he doesn't accomplish the things that he said he's going to accomplish.

So, again, we're asking the Court to focus more on the rehabilitation factor in 3553 and give him a chance by just giving him an additional month on each robbery for a total of 86 months.

THE COURT:  Thank you very much.

Mr. Boisseau, would you like to say anything?

THE DEFENDANT:  Yes, sir, I wrote a letter.

THE COURT:  Please go ahead.  Get in front of the mic.

THE DEFENDANT:  I'm writing this because honestly I'm terrified of being sentenced by you and all you know are the worst things about me.

So what I did to get here is not excusable. There is no way to justify putting people in danger because I couldn't get my life together.  I gave up and I chose to steal instead of to endure.  None of the people in those businesses

had ever harmed me or even met me before.  They didn't deserve to go through that and I'm here because of what I did to them and I'm sorry.

All of this is my fault, and I accept responsibility for it.  My family didn't raise me to take things or hurt people.  They didn't teach me to quit and that's exactly what I did and I'm ashamed of that.  The past four years I've regretted what I did to those people more than anything else.  I embarrassed my family, I threw my life way, but the worst thing was putting those people through that.

The past four years I realized how much that I did deserve to be here for what I did, but it wasn't wasted on me.  It put me in a situation where I have to face myself, and I decided to be a better person.  I'm not the same person I was four years ago.  I don't know how to show or prove that right now, but I will.

You know, whatever punishment you give me, I accept it; but I realize that some things take a lot longer to correct than they do to mess up.  So the time I spent here, I'm just using to be a better person.  I was weak when I made them choices to end up here.  I'm just asking for a chance at life.

THE COURT:  Thank you very much, sir.

Yes, sir.  For the prosecution?

MR. GANZ:  Judge, this was a vicious crime; and as the PSR calls out, these men walked in masks, guns; put those guns

in those employees' faces; dragged them around the store; and put them on the floor.

I ask Your Honor to put yourself in the position of those employees at that moment of terror in not one but two robberies.  This was not a simple robbery of a few hundred dollars from a convenience store.

According to the PSR, the June 3 robbery, the business suffered a loss of over $153,000; and in the second robbery, they suffered a loss of $164,000.  And but for lucky timing and the good work of the Houston Police Department, they were able to recover some of that loss, but EZ Pawn is still out over $164,000; and I do hope Your Honor is going to order restitution.

The defendant is a violent recidivist.  In 2011, he was convicted of burglary, he was released from that.  He re-served his sentence for that in April of 2014; and just five months later, he committed another aggravated robbery.  He was discharged from that prison sentence in September 2020; and just nine months later in June of 2021, he commits not one but two of these robberies.  That, to me, is a powerful statement.

THE COURT:  Do I have a choice here?  Don't I have to run these sentences consecutively?

MR. GANZ:  I'm sorry?

THE COURT:  Do I have a choice here?  Don't I have to run the sentences consecutively?

MR. GANZ:  I believe the 84 months has to be run consecutive, I think, to any Hobbs Act.

THE COURT:  Yes.

MR. GANZ:  The guideline range, when we think about the 3553(a) factors, the history and characteristics of the defendant, consider that recidivism, and public safety I think is absolutely critical here, and also think about the loss to the victim.

The guideline range is 121 to 151 months for the robberies with 84 months for the 924(c) tagged on top of that.

THE COURT:  84 plus 121?

MR. GANZ:  Yes.  So my understanding is that the range would be 205 to 235 months.  The co-defendant received, I believe, 84 months for one robbery; so at the very least, if the co-defendant gets 84 months for one robbery, he should get 84 times two or 168 months for his two robberies.

But, again -- and I think 168 -- to the extent 168 is below the 205, if the Court wants to mitigate for the unfortunate circumstances of his upbringing, that would be one way to do it.

THE COURT:  Give me that again now.

MR. GANZ:  If we do 84 times 2 --

THE COURT:  168, yes.

MR. GANZ:  168.  And the guideline range starts at 205 and then goes up to 235; then 168, I think, is below the bottom

of the guidelines and that could be offered as a form of mitigation for the unfortunate circumstances that opposing counsel has called out.

But regardless, I would say the guidelines in general are quite measured with the exception of certain -- especially heinous crimes like kidnapping or child sex abuse, the guidelines are generally, I think, measured rather than harsh.

So I think the fact that we have a guideline range of 205, I think that's reasonable; but at the very least, I think it's got to be at least 168 to be consistent with what the co-defendant got for the one robbery.

MR. EGBUONU:  And, Your Honor, counsel, if I may briefly.

THE COURT:  Yes.

MR. EGBUONO:  Again, to the government's point, the co-defendant did get 84 months; and it's our position that 84 months is a significant --

THE COURT:  Yes, it is a significant sentence.

MR. EGBUONU:  It is a significant sentence.  But more importantly, you know, the government has brought up restitution.  Restitution is something if the Court decides to order, that has to be paid.

So we're asking for Mr. Boisseau to go to -- he has a plan, Your Honor; and you've heard it from him himself.

He wants to go to a facility where he can get these certifications and reenter society with a trade and be productive.

If restitution is ordered, I'm assuming EZ Pawn and the government want him to find a job so he can pay back the restitution.  So these are all things that he will have to -- the restitution, he will be punished for because he will be paying it back when he reenters society.

THE COURT:  I'm not optimistic it can be paid, what's owed.

MR. GANZ:  The challenge, Judge, is if you commit two robberies and you only get two months more than your co-defendant, I think that sends the wrong signal and I think it's --

THE COURT:  It's too lenient.

MR. GANZ:  It's inconsistent, but it also sends the wrong message to this defendant.

THE COURT:  Can I hear from probation, please?

PROBATION OFFICER:  Yes, Your Honor.  Probation has nothing to --

THE COURT:  Can you come closer and stand by a mic?

PROBATION OFFICER:  Your Honor, probation has nothing further to add.  We just stipulate to what we've included in our filings.

THE COURT:  Do you recommend Counts 1 and 3, 151 months

concurrent and Count 2, 84 months consecutive?

PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  Oh, boy.

I'm going to take a short break.  No one need rise.  That's all right.

(Court is in recess.)

THE COURT:  Keep your seats, everybody.  That's all right.  Okay.

Anything further then?

MR. GANZ:  Nothing further, Judge.

MR. EGBUONU:  Your Honor, I don't know if you want to hear from any of the family.

THE COURT:  Yes, absolutely.

MR. EGBUONU:  I think his grandmother, Stacie Boisseau, wanted to address the Court before sentencing.

THE COURT:  Please step forward and get yourself near a mic.  We can allow no physical contact.

Thank you for being here, ma'am.

MS. BOISSEAU:  Good morning.  Thank you for having me, Judge.

THE COURT:  Tell me your name.

MS. BOISSEAU:  My same is Stacie Maria Boisseau, and I am Elijah Boisseau's grandmother.

THE COURT:  Thank you for your letter.  It's very meaningful.

MS. BOISSEAU:  And I'm here on behalf of my grandson. And like I said in my letter, we understand what he did, and he understands what he's done.  We're not asking for exoneration, but we are asking for leniency.  And I have a home in Rosharon, Texas.  Elijah's room is there waiting for him.

And like I said, when my mother was dying of Stage 4 cancer, Elijah was the one who was there with me every day that got me through.  He helped me take care of my mother and his great grandmother.

When I suffered a debilitating car accident when an 18-wheeler decided to use my car as a stop sign, Elijah was there for over a year taking care of his sisters and his younger brother.  He's been my rock.

And I understand the peer pressure and what's going on with these young kids today.  He got caught up in something and then he felt that he just couldn't get out of it.

But, Your Honor, please be lenient and understand that I'm here for him and I'm not going anywhere.  I'm going to be here for him; and when he comes out, my church, St. Francis Xavier Catholic Church, is already positioned to offer him employment.

And the service guy that takes care of the church, Mr. Jones, he's going to mentor Elijah and help with HVAC license, plumbing, electrical.  Whatever it is he needs, he's going to get the support that he needs from family, from

job, economic, whatever it is that we need to do to make sure that he never has to see you again unless y'all just happen to run into each other at a restaurant.

THE COURT:  Yeah, I think he's learned his lesson.  I do believe that.

MR. EGBUONU:  And, again, Your Honor, just briefly, many of the crimes that the government alluded to, these are things that happened, as we said in our sentencing memorandum, when he was 17 and these are things that happened in his youth and now he's 30.

He is now a matured -- in my opinion -- again, this is just my opinion based on the period of representing him over, you know, the last year, year and a half or so, of him accepting responsibility; you know, wrote that letter to the Court on his own.

And he understands the nature of his offense and he understands he needs to be punished, but we're asking for a punishment that is not greater than necessary.  He has a plan. He wants to go to a facility where he can get those certifications, he has employment when he comes home.  And we're just asking the Court to give him a second chance and give him the opportunity to rehabilitate himself and be a contributing member to society.

MS. BOISSEAU:  And we love Elijah and we know that we can give him the support and whatever he needs that the prison

system can't.  We can be that emotional support that he needs. We love him, and we need him to come home; so as soon as you can send him home, please, Your Honor, please.

THE COURT:  There's limited flexibility for me in this, but I do appreciate your message; and I'm grateful that you're here today.

Thank you very much.

Mr. Ganz, you want to say anything more?

MR. GANZ:  Please consider the victims.  Please consider the fact that he could have reformed after the first crime, he didn't.  He could have reformed after the second crime, he didn't.  Please consider that that still missing $164,000 is lost and God knows where.  And please put yourself in the position of the most likely minimum-wage employees who had those guns stuck in their faces and dragged around the store.

THE COURT:  Okay.  The sentence is pronounced as follows:  For Counts 1 and 3, defendant is sentenced to 30 months to run concurrently; Count 2, 84 months would be consecutive to Counts 1 and 3; so 30 plus 84.

Supervised release, three years as to each count concurrently for a total of three years.  Restitution in the amount of $164,427.91, a special assessment of $300.

While on supervised release, the defendant shall not commit another federal, state or local crime; shall comply

with the standard conditions that have been adopted by this Court under General Order Number 2017-01; abide by any mandatory conditions required by law; shall comply with the additional conditions as noted in the appendix of the presentence report.

The defendant must also cooperate in the collection of a DNA sample to the extent authorized by law.

The Court finds that $153,368.69 is owed to EZ Pawn shop located at 11213 Bissonnet; and $10,058.95 is owed to the EZ Pawn located at 13555 Westheimer Road.

These amounts should be paid severally with -- $10,058.95 is to be paid jointly and severally with co-defendant Eugene Rogers.

Defendant's restitution obligation shall not be affected by any restitution payments that may be made by other defendants in this case except that no further payment shall be required after the sum of the amounts paid by all defendants has fully covered all the compensable loss.

Do you require any more details on supervised release?

MR. EGBUONU:  No, Your Honor.

THE COURT:  Any further clarification?

THE PROBATION OFFICER:  No, Your Honor.

Just to clarify, Counts 1 and 3, that was 30 months as to each count concurrent --

THE COURT:  Yes, right.

THE PROBATION OFFICER:  And then the 84 months consecutive.  That's 114 months?

THE COURT:  Yes.

PROBATION OFFICER:  Okay.  Thank you, Your Honor.

THE COURT:  I'm very sorry.

(The proceedings were adjourned.)

* * * *

REPORTER'S CERTIFICATE

I, Lanie M. Smith, CSR, RMR, CRR, Official Court Reporter, United States District Court, Southern District of Texas, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

___/s/ Lanie M. Smith_____
Official Court Reporter